IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BARNA CONSHIPPING, S.L.,           §
                                   §
        Plaintiff,                 §
                                   §
v.                                 §        CIVIL ACTION NO. H-09-163
                                   §
8,000 METRIC TONS, MORE OR         §
LESS OF ABANDONED STEEL,           §
*in rem*, et al.,                  §
                                   §
        Defendant.                 §

Consolidated with

COMMERCIAL METALS COMPANY,         §
                                   §
        Plaintiff,                 §
                                   §
v.                                 §        CIVIL ACTION NO. H-09-272
                                   §
M/V SATURNUS, *in rem*, her        §
engines, tackle, apparel, etc.;    §
S-Bulk, KS; Seven Seas Carriers    §
AS; and Oldendorff Carriers        §
GmbH & Co., KG, *in personam*,     §
                                   §
        Defendants.                §

MEMORANDUM AND ORDER, AND ORDER OF STAY

        Pending are Defendant Oldendorff Carriers GmbH & Co., KG's

12(b)(3) Motion to Dismiss in Favor of Arbitration (Document No.

82) and Claimant S-Bulk, KS's Motion to Dismiss in Favor of

Arbitration (Document No. 124).  Also pending are Claimant S-Bulk,

KS's Motion to Vacate Order (Document No. 115) and Objections to

Magistrate Judge's Recommendation (Document No. 119), as well as

Defendants S-Bulk, KS and Seven Seas Carriers AS's Motion for Summary Judgment (Document No. 123).  After carefully considering the motions, responses, replies, oral arguments of counsel, and the applicable law, the Court concludes as follows.

## I.   Background

This consolidated case involves the shipment of steel beams (the "cargo" or "steel") from Spain to various ports in the United States and Mexico.[1]  The pending motions arise out of the case initiated by Commercial Metals Company ("CMC") against the M/V Saturnus, her engines, tackle, apparel, etc. (the "Vessel"), *in rem*, and against S-Bulk KS ("S-Bulk"), Seven Seas Carriers AS ("Seven Seas"), and Oldendorff Carriers GmbH & Co., KG ("Oldendorff"), *in personam* (collectively, the "Vessel Interests"), for alleged damage to the cargo before and during transit.[2]

In October 2008, CMC contracted to purchase from Compania Espanola de Laminacion, S.L. ("Celsa") 19,826 metric tons of steel, to be delivered by vessel in four separate lots to: (1) Norfolk, Virginia; (2) Mobile, Alabama; (3) Houston, Texas; and (4) Altamira, Mexico.  Celsa hired Barna Conshipping, S.L. ("Barna") to handle the overseas transportation of the steel.

---

[1] *See* Document No. 13 (Order to Consolidate Cases).

[2] Verified Complaint (Document No. 1), <u>Commercial Metals Co. v. MV Saturnus</u>, No. 09-cv-272 (S.D. Tex. Jan. 30, 2009) (companion case).

2

Barna voyage-chartered the Vessel from its disponent owner, Oldendorff, to carry the cargo.[3]   The Master of the Vessel, upon loading the steel beams in Spain, allegedly noted pre-loading damage to the beams, and directed Oldendorff's local dock agent in Barcelona to issue *claused* bills of lading for the cargo.[4] However, the Letter of Credit that CMC had established with its bank required *clean* bills of lading for payment to Celsa to be authorized.[5]   Barna requested Oldendorff to direct the issuance of clean bills of lading instead of the claused bills in exchange for a Letter of Indemnity issued to "Oldendorff Carriers GmbH & Co KG as disponent owners and Master of the MV SATURNUS."[6]

---

[3] The Vessel is owned by S-Bulk and operated by Seven Seas. S-Bulk time-chartered to Grand China Shipping (Hong Kong) Co. Ltd. ("Grand China"), who voyage-chartered the Vessel to Oldendorff, who sub-voyage chartered to Barna.  Document No. 124 at 2 & exs. A, B, C.

[4] Document No. 124 at 3.  "A Bill of Lading is a 'document which is signed by the carrier or his agent acknowledging that goods have been shipped on board a specific vessel that is bound for a particular destination and stating the terms on which the goods are to be carried.'"  The Rice Co. (Suisse), S.A. v. Precious Flowers Ltd., 523 F.3d 528, 531 n.2 (5th Cir. 2008) (citations omitted).  A "claused" bill of lading indicates damage or other imperfections relating to the cargo upon its loading, while a "clean" bill indicates that the cargo is "in apparent good order and condition."  *See, e.g.*, T.J. Stevenson & Co., Inc. v. 81,193 Bags of Flour, 629 F.2d 338, 345 (5th Cir. 1980).

[5] Document No. 64 at 4.  *See also* Order (Document No. 16), Commercial Metals Co. v. JPMorgan Chase Bank, N.A., Civil Action No. 3:09-CV-0047-N, at 5-6 (N.D. Tex. Mar. 9, 2009).

[6] Document No. 64 at 3 & ex. H.

The clean bills were issued, CMC's bank honored the Letter of Credit, and the Vessel sailed on to Norfolk.  Upon its arrival, CMC refused to accept the cargo or otherwise make arrangements for discharge, as allegedly required under its contract with Celsa. Barna, upon allegedly incurring demurrage charges to Oldendorff as a result of the delay, filed suit in the Eastern District of Virginia on December 22, 2008 against the cargo to be discharged there, *in rem*, and against CMC, *in personam*.[7]  The court ordered arrest of the cargo, CMC filed a claim of interest to it, and the cargo was ordered to be discharged and placed in the care of a substitute custodian.[8]  After having discharged the beams due to be unloaded in Virginia, the Vessel continued on to Mobile, Alabama, whereupon a similar course of events played out, leading to another suit in the Southern District of Alabama, with more cargo unloaded and placed in the care of a substitute custodian in January 2009.[9]

The Vessel then sailed to Houston, where, yet again, Barna brought this similar suit, and the cargo was arrested and placed in the care of a substitute custodian.[10]  The cargo bound for Mexico

---

[7] <u>Barna Conshipping, S.L. v. 2000 Metric Tons, More or Less, of Abandoned Steel, et al.</u>, Civil Action No. 2:08cv612 (E.D. Va. 2008).

[8] *See generally* <u>id.</u>

[9] <u>Barna Conshipping, S.L. v. 1800 Metric Tons, More or Less, of Abandoned Steel, et al.</u>, Civil Action No. 09-0027-KD-C (S.D. Ala. 2009).

[10] Document Nos. 3-5.

was also arrested,[11] and CMC brought its separate suit (now consolidated with Barna's action) against the Vessel, S-Bulk, Seven Seas, and Oldendorff for the alleged damage to the cargo.[12]  The Vessel was arrested, whereupon its insurer, Assuranceforeningen GARD-gjensidig ("GARD"), posted a Letter of Undertaking in the amount of $2.5 million as security to effect the Vessel's release.[13]

## II.  Arbitration

Oldendorff seeks dismissal under Federal Rule of Civil Procedure 12(b)(3) (improper venue) of CMC's claims, asserting that they are subject to a valid arbitration clause requiring arbitration in London.  The relevant clause appears in the sub-voyage charter party, dated October 21, 2008, between Oldendorff and Barna (the "Oldendorff/Barna Charter Party") under the header "Law and Arbitration":

> (a)  This Charter Party shall be governed by and construed in accordance with English law and any dispute

---

[11] Document No. 26.  Barna's *in rem* claims were dismissed in all three district courts, from which Barna filed three interlocutory appeals.  Document Nos. 81, 87 (Texas); Document Nos. 89, 96, Barna Conshipping, Civil Action No. 2:08cv612 (Virginia); Document Nos. 73, 78, Barna Conshipping, Civil Action No. 09-0027-KD-C (Alabama).  CMC and Barna have settled the Alabama action; the others remain pending.

[12] Verified Complaint (Document No. 1), Commercial Metals Co., No. 09-cv-272.

[13] Document No. 64, ex. I; Order to Seize a Vessel (Document No. 3), Commercial Metals Co., No. 09-cv-272.

arising out of this Charter Party shall be referred to arbitration in London in accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force.

. . .

(c)  Any dispute arising out of this Charter Party shall be referred to arbitration at the place indicated in Box 25, subject to the procedures applicable there.  The laws of the place indicated in Box 25 shall govern this Charter Party.[14]

Box 25, located on the first page of the charter party, indicates: "English law to apply.  Arbitration in London."[15]

Oldendorff asserts that the charter party was properly incorporated into the bills of lading to which CMC, as consignee, is a party.  CMC responds that it cannot be bound by the clause, as it was not a party to the underlying Oldendorff/Barna Charter Party and confusion exists as to which document was incorporated into the bills of lading.[16]

A.    Legal Standard

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), implemented at 9 U.S.C. §§ 201-

---

[14] Document No. 114, ex. I at APP. 000085.

[15] Id., ex. I at APP. 000082.

[16] Document No. 96 at 3-4.  Though the Oldendorff/Barna Charter Party dictates that British law is to apply to its construction, the preliminary issue of incorporation is governed by United States law.  Steel Warehouse Co., Inc. v. Abalone Shipping Ltd. of Nicosai, 141 F.3d 234, 238 (5th Cir. 1998).

208, governs the agreement, if any, that Oldendorff asserts mandates arbitration. *See* 9 U.S.C. §§ 2, 202 (arbitration agreements, including those in maritime contracts, subject to Convention). The Convention further incorporates the provisions of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, to the extent such provisions are "not in conflict" with the Convention. Id. § 208. Whether the Convention requires compelling arbitration is a "limited inquiry" that should be answered in the affirmative if four conditions are fulfilled: (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen. Freudensprung v. Offshore Technical Servs., Inc., 379 F.3d 327, 339 (5th Cir. 2004). Only if the court "finds that the said agreement is null and void, inoperative or incapable of being performed" should it not compel arbitration upon fulfillment of these conditions. Id. (quoting Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co., 767 F.2d 1140, 1146 (5th Cir. 1985)).

As to CMC and Oldendorff, the latter three requirements are readily fulfilled. The only question is whether, as between CMC and Oldendorff, there is actually a "written agreement to arbitrate the matter."

7

"In order to be subject to arbitral jurisdiction, a party must generally be a signatory to a contract containing an arbitration clause." Bridas S.A.P.I.C. v. Gov't of Turkmenistan, 345 F.3d 347, 353 (5th Cir. 2003) (citations omitted). A bill of lading, while not always a contract, serves as the contract of carriage when, as here, it is issued under a charter party and negotiated to a third party not involved in the charter party, such as a consignee. Cargill Ferrous Int'l v. Sea Phoenix MV, 325 F.3d 695, 699 (5th Cir. 2003); see also 2 Thomas J. Schoenbaum, Admiralty and Maritime Law § 11-6 (2004).[17] Thus, CMC, as consignee to the bills of lading, could be bound by an arbitration agreement that is included or effectively incorporated in the bills so as to give sufficient notice of the arbitration provisions. See The Rice Co. (Suisse), S.A. v. Precious Flowers Ltd., 523 F.3d 528, 537 (5th Cir. 2008) ("Bills of lading commonly incorporate charters and bind the signatories to the charter terms."); Associated Metals & Minerals Corp v. M/V Venture, 554 F. Supp. 281, 283 (E.D. La. 1983)

---

[17] Bills of lading serve multiple functions in admiralty law.

A bill of lading is, in the first instance and most simply, an acknowledgment by a carrier that it has received goods for shipment. Secondly, the bill is a contract of carriage. Thirdly, if the bill is negotiated . . . it controls possession of the goods and is one of the indispensable documents in financing the movement of commodities and merchandise throughout the world.

Sea Phoenix, 325 F.3d at 702 (quoting Grant Gilmore & Charles L. Black, The Law of Admiralty 93 (2d ed. 1975)).

("[N]otice is effectively given where the terms of the charter party are expressly incorporated into the bill of lading."); *see also* <u>Steel Warehouse Co., Inc. v. Abalone Shipping Ltd. of Nicosai</u>, 141 F.3d 234, 237 (5th Cir. 1998) ("Whether one styles this as an issue of constructive notice or incorporation alone, the analysis basically turns on incorporation.").

To incorporate a charter party effectively, the bill of lading must "specifically refer to the charter party." <u>Cargill Inc. v. Golden Chariot MV</u>, 31 F.3d 316, 319 (5th Cir. 1994). "[P]recedent allows for quite a bit of leeway in the drafting of such clauses, and does not require a punctilious degree of specificity." <u>Steel Warehouse</u>, 141 F.3d at 237. Although a strong federal policy favors arbitration, the policy does not apply to the initial question of whether there is a valid agreement to arbitrate. *See* <u>Banc One Acceptance Corp. v. Hill</u>, 367 F.3d 426, 429 (5th Cir. 2004) (discussing the FAA). Once a court determines that an arbitration agreement exists, however, the court "must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration." <u>Id.</u>

B.     Whether CMC and Oldendorff Agreed to Arbitrate

Because CMC is the named consignee in the bills of lading for the steel, and is a party to them by its own admission,[18] if the bills effectively incorporate the Oldendorff/Barna Charter Party, then CMC is a party to a valid arbitration agreement covering its claims against the Vessel Interests.

The bills of lading for the steel are "Congen Bills," an internationally recognized form of bill of lading.[19]  The face of each bill states:  "Freight payable as per CHARTER-PARTY dated 21-10-2008," and "FOR CONDITIONS OF CARRIAGE SEE OVERLEAF."[20]  The reverse side of each bill, under the label "Conditions of Carriage," states:  "(1) All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the law and arbitration clause, are herewith incorporated."[21]

This terminology is nearly identical to the language in another Congen bill of lading found sufficient to identify a charter party for incorporation in Steel Warehouse.  Under the facts of that case, the language held to incorporate a charter

---

[18] Document No. 82, ex. A; Verified Complaint (Document No. 1), Commercial Metals Co., No. 09-cv-272, at ¶¶ 2.2, 3.1, 4.1.

[19] See, e.g., Document No. 82, ex. A at 1 (bill of lading labeled "Congen Bill of Lading"); see also Steel Warehouse, 141 F.3d at 237 (noting same).

[20] See, e.g., Document No. 82, ex. A at 1.

[21] Document No. 82, ex. B.

party into the bills at issue read: "Freight Payable as per CHARTER-PARTY dated 21 OCTOBER 1994 ALL TERMS AND CONDITIONS OF WHICH ARE INCORPORATED IN THIS B/L."  141 F.3d at 237.  The facts in this case are even stronger, because here each bill of lading also specifies the existence of a "law and arbitration clause," giving CMC direct notice that an arbitration clause is present in the referenced charter party.  *See also* Cont'l Ins. Co. v. Polish S.S. Co., 346 F.3d 281, 283-84 (2d Cir. 2003) (holding sufficient a date-only identification of charter party on Congen bill of lading, and collecting cases holding same regarding various bills of lading).

CMC argues, however, that the facts present an ambiguity as to which document actually constitutes the "CHARTER-PARTY dated 21-10-2008."  CMC argues that in Barna's and Oldendorff's arguments in this and other proceedings[22] regarding the governing terms of their relationship, they have alternately contended that the charter party dated October 21, 2008 governs their relationship, and that an October 22, 2008 email containing a "fixture recap" and an attached June 20, 2008 charter party, is controlling.[23]  CMC argues that this is evidence of *two or more* charter parties between Barna

---

[22] Specifically, before the Eastern District of Virginia, Barna Conshipping, S.L., Civil Action No. 2:08cv612 (E.D. Va. 2008), and the Southern District of New York, Oldendorff Carriers GmbH & Co. KG v. Barna Conshipping, S.L., No. 09 Civ. 5280 (S.D.N.Y. 2009).

[23] Document No. 96 at 4-8.

and Oldendorff, one dated October 21, 2008, and the other dated either October 22, 2008 or June 20, 2008, and that "the parties to the alleged charterparty cannot agree which one controls, which creates confusion."[24]

CMC thus asserts that this case is like <u>Volgotanker Joint Stock Co. v. Vinmar Int'l Ltd.</u>, No. 01 CV 5064, 2003 WL 23018798 (S.D.N.Y. Dec. 22, 2003).   The bill of lading at issue in <u>Volgotanker</u> stated that "freight was payable as per charter-party dated January 12, 1998." <u>Id.</u> at *5.  There, however, the ambiguity arose from the existence of *two different voyage charter parties* for one voyage, one with the head charter and the other with the sub-charter, and *both dated* January 12, 1998.  <u>Id.</u> at *1-*2.  One charter party called for arbitration in London, and the other in New York.  <u>Id.</u> at *2.  Thus, the bare reference to a "charter party dated January 12, 1998" in the bill of lading "fail[ed] to adequately identify which of the two existing charter parties it is referencing so as to warrant incorporation of that charter party." <u>Id.</u> at *6.

Such an ambiguity is not present here.  Only one charter party bears the date of October 21, 2008, and each bill of lading refers

---

[24] <u>Id.</u> at 3. Oldendorff provides a very persuasive explanation for these seemingly incongruent references, and the Court is satisfied that there was indeed only one charter party between Oldendorff and Barna--dated October 21, 2008.

to that one "CHARTER-PARTY dated 21-10-2008."[25]  Even if, as CMC
argues, Oldendorff and Barna later argued between themselves about
the meaning of a fixture recap on October 22, 2008, with its
attached charter party template dated June 20, 2008, the "plain
language reading" of the bills of lading refers only to the October
21, 2008 charter party, which requires arbitration in London.[26]  *See*
Steel Warehouse, 141 F.3d at 237.  The bills' incorporation of the
Oldendorff/Barna Charter Party therefore binds CMC as the consignee
of the bills to the arbitration provision.

Moreover, the scope of the arbitration clause is broad: it
applies to "[a]ny dispute arising out of this Charter Party," not
just those between the parties to the underlying charter.[27]  When
dealing with such a clause, "a court should compel arbitration, and
permit the arbitrator to decide whether the dispute falls within
the clause."  The Rice Co., 523 F.3d at 536 (citations omitted).

C.   Stay of Litigation and Compulsion of Arbitration

Oldendorff seeks dismissal without prejudice of CMC's claims
against it under Federal Rule of Civil Procedure 12(b)(3) (improper

---

[25] *See, e.g.*, document No. 82, ex. A at 1.

[26] Regardless, both the June 20, 2008 charter party template
attached to the October 22, 2008 fixture recap and the October 21,
2008 charter party contain *identical* arbitration provisions.  *See*
Document No. 82, ex. C at 5, 8; Document No. 114, ex. I at APP.
000082, 000085.

[27] Document No. 114, ex. I at APP. 000085.

venue) because CMC's claims "are subject to a valid and mandatory arbitration agreement and should be dismissed without prejudice in favor of arbitration."[28]

Section 3 of the FAA, however, provides that "a *stay* is mandatory upon a showing that the opposing party has commenced suit 'upon any issue referable to arbitration under an agreement in writing for such arbitration . . . .'" <u>Alford v. Dean Witter Reynolds, Inc.</u>, 975 F.2d 1161, 1164 (5th Cir. 1992) (quoting <u>Campeau Corp. v. May Dep't Stores Co.</u>, 723 F. Supp. 224, 227 (S.D.N.Y. 1989) (emphasis added).[29] Nonetheless, this rule "was not intended to limit dismissal of a case in the proper circumstances." <u>Id.</u>  "If *all of the issues raised before the district court* are

---

[28] Document No. 82 at 1.

[29] Section 3 of the FAA states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  The Convention incorporates all provisions of the FAA not "in conflict" with it.  9 U.S.C. § 208.  Nothing in the Convention conflicts with the mandatory stay provision of section 3, and it is therefore not a bar to issuance of a stay. *See* <u>Citgo Petrol. Corp. v. M/T Bow Fighter</u>, No. H-07-2950, 2009 WL 960080, at *3 (S.D. Tex. Apr. 7, 2009) (Miller, J.) (holding same).

arbitrable, dismissal of the case is not inappropriate." <u>Fedmet</u> <u>Corp. v. M/V Buyalyk</u>, 194 F.3d 674, 678 (5th Cir. 1999) (citing <u>Alford</u>, 975 F.2d at 1164) (emphasis added). Moreover, the Supreme Court in <u>Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer</u> noted the propriety of a district court's retention of jurisdiction over a maritime dispute made subject to arbitration in Japan by bills of lading. 115 S. Ct. 2322, 2329-30 (1995). This is consistent with the approach of the Convention, which "reserves to each signatory country the right to refuse enforcement of an award where the 'recognition or enforcement of the award would be contrary to the public policy of that country.'" <u>Mitsubishi Motors Corp. v. Soler</u> <u>Chrysler-Plymouth, Inc.</u>, 105 S. Ct. 3346, 3359-60 (1985) (citing Art. V(2)(b) of the Convention). Thus, the Convention also contemplates courts retaining jurisdiction over cases to be arbitrated elsewhere in order to ensure that the judgment comports with local public policy.

Oldendorff does not seek dismissal of *all* claims before the Court, and does not contend that all pending claims are subject to arbitration. Apart from CMC's claims against the Vessel Interests, there is also a claim for indemnity against Barna brought by S-Bulk as claimant to the Vessel, the arbitrability of which has not been established. Under these circumstances, where it appears that arbitration cannot be compelled as to all claims, dismissal of the case is inappropriate. Moreover, even if all issues were shown to

be arbitrable, dismissal, while "not inappropriate," <u>Fedmet</u>, 194 F.3d at 678, still would not be *required*.   Such a determination rests within the discretion of the Court.   <u>Apache Bohai Corp., LDC v. Texaco China, B.V.</u>, 330 F.3d 307, 311 n.9 (5th Cir. 2003). Given these circumstances, and considering the Convention's policy favoring retention of jurisdiction over disputes subject to foreign arbitration, the Court concludes that a stay, rather than dismissal, is appropriate here.   *See* <u>Citgo Petrol. Corp. v. M/T Bow Fighter</u>, No. H-07-2950, 2009 WL 960080, at *3-*4 (S.D. Tex. Apr. 7, 2009) (Miller, J.) (holding that stay rather than dismissal in favor of arbitration was appropriate where arbitration did not cover all claims before the court, and would not be inappropriate even if all claims were covered).

Accordingly, and because the foundation for Oldendorff's motion is its insistence that CMC's claims must be arbitrated in London, the Court will construe the motion as one to compel arbitration and to stay further proceedings in this Court.   *See* <u>Sam Reisfeld & Son Import Co. v. S.A. Eteco</u>, 530 F.2d 679 (5th Cir. 1976) (affirming district court, which treated a motion to dismiss "as one seeking a stay pending arbitration," and granted a stay of proceedings in favor of arbitration to be commenced in Belgium); *see also* <u>Westervelt v. Bayou Mgmt., L.L.C.</u>, No. Civ.A. 03-0860, 2003 WL 22533672, at *4 (E.D. La. Nov. 4, 2003) ("Although the defendants have facially moved this Court to 'dismiss' the present

16

suit, this Court interprets this request as containing an implicit 'motion to compel' arbitration."). Thus, CMC and Oldendorff will be required to arbitrate their dispute in London in accordance with the Oldendorff/Barna Charter Party incorporated into the bills of lading. *See* 9 U.S.C. § 206 ("A court . . . may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States.") Moreover, because not all claims have been shown to be subject to arbitration, the motion to dismiss--construed as a motion to stay these proceedings and to compel arbitration--will be granted, a stay will be entered pending conclusion of the London arbitration, and the motion to dismiss will otherwise be denied.

S-Bulk filed its Motion to Dismiss in Favor of Arbitration (Document No. 124) solely as claimant to the Vessel.[30] S-Bulk and Seven Seas represent that they will join in the motion *in personam* only if their Motion for Summary Judgment (Document No. 123) is denied.[31] For the reasons discussed above, the Court construes Claimant S-Bulk's Motion to Dismiss in Favor of Arbitration (Document No. 124) as a motion to compel arbitration.

During oral arguments, counsel for S-Bulk represented that the result S-Bulk seeks to achieve by its Motion to Dismiss in Favor of Arbitration will be equally achieved by the Court granting

---

[30] Document No. 141 at 2.

[31] Document No. 124 at 1 n.1.

17

Oldendorff's motion and compelling arbitration in London. Accordingly, S-Bulk's motion in a practical sense is redundant and will be denied as moot.

CMC's claims against the Vessel, S-Bulk, and Seven Seas should all be stayed because of CMC's agreement to arbitrate with Oldendorff. As stated by the Fifth Circuit:

> We have long held that if a suit against a nonsignatory is based upon the same operative facts and is inherently inseparable from the claims against a signatory, the trial court has discretion to grant a stay if the suit would undermine the arbitration proceedings and thwart the federal policy in favor of arbitration.

Hill v. G E Power Sys., Inc., 282 F.3d 343, 347 (5th Cir. 2002) (citing Sam Reisfeld, 530 F.2d at 681). This principle was also the basis for stays in cases with nonsignatories in Subway Equip. Leasing Corp. v. Forte, 169 F.3d 324 (5th Cir. 1999) and in Harvey v. Joyce, 199 F.3d 790 (5th Cir. 2000). See Hill, 282 F.3d at 347-48 ("Taking into account the strong federal policy in favor of arbitration, our application of Section 3 to nonsignatories in Subway and Harvey only prefers the preservation of the arbitration rights of the signatory defendant over the speedy resolution of claims against nonsignatories.").

Here, CMC's claims against all the Vessel Interests are "based upon the same operative facts" and are "inherently inseparable from the claims" against Oldendorff. See Hill, 282 F.3d at 347. CMC's "complaint makes identical claims against" all the Vessel

Interests, all of which claims relate to the same damage allegedly caused to the same cargo during the same voyage.[32]  *See* <u>Hill</u>, 282 F.3d at 348; *cf.* <u>Waste Mgmt.</u>, 372 F.3d at 345 (finding even separate legal theories of recovery to be "inseparable" when plaintiff sought recovery for the "same violation").

Additionally, because all of CMC's claims will be stayed pending arbitration, S-Bulk's and Seven Seas's Motion for Summary Judgment (Document No. 123) will be denied without prejudice to its being refiled, if appropriate, after the Stay is lifted following the completion of arbitration.

### III.  <u>Claimant's Objections to Magistrate Judge's Recommendation</u>

Also pending is Claimant S-Bulk KS's Motion to Compel Specific Performance (Document No. 64), to which Plaintiff Barna Conshipping S.L. has filed its response in opposition.  The matter was referred to Magistrate Judge Frances H. Stacy, who issued an Order entered

---

[32] CMC brought its suit against the Vessel, *in rem*, and the Vessel Interests, *in personam*, for:

> [B]reach of maritime contract, maritime tort, negligent misrepresentation, fraud, negligence, breach of contract(s) of carriage, breach of contract of bailment, unseaworthiness, deviation and/or breach of the implied and/or express warranties all arising out of the loading, stowage and carriage of steel cargo aboard the MV *Saturnus*, and the issuance of bills of lading for that cargo.

Verified Complaint (Document No. 1), <u>Commercial Metals Co.</u>, No. 09-cv-272, at 1 (companion case).

October 20, 2009 (Document No. 112), which she subsequently recharacterized as a Memorandum and Recommendation by Order entered January 19, 2010 (Document No. 127).  Claimant S-Bulk KS filed objections to the Magistrate Judge's Memorandum and Recommendation (Document No. 129).

The Court has made a *de novo* determination of Claimant S-Bulk's Motion, the Magistrate Judge's analysis in her Orders, and the Objections filed by S-Bulk.  The Court concurs with the Magistrate Judge's analysis in that S-Bulk's premise for compelling Barna to post bond requires a determination that S-Bulk is entitled to indemnification from Barna as a third party beneficiary of a letter of indemnity issued by Barna to Oldendorff.  This determination would concomitantly determine S-Bulk's entitlement to the ultimate relief it seeks in its Third Party Complaint, namely, that a judgment be entered in favor of S-Bulk against Barna "for full indemnity of any claim herein."  Judge Stacy's Order dated October 20, 2009 (Document No. 112) recharacterized as a Recommendation, is therefore ADOPTED by this Court, S-Bulk's objections to the Magistrate Judge's recommendation are OVERRULED, and S-Bulk's Motion to Compel Specific Performance (Document No. 64) is DENIED, without prejudice to its being refiled as a motion for summary judgment after the Stay is lifted.

IV.  <u>Order</u>

For the reasons stated above, it is

ORDERED that Defendant Oldendorff Carriers GmbH & Co., KG's 12(b)(3) Motion to Dismiss in Favor of Arbitration (Document No. 82), construed as a motion to stay these proceedings and to compel arbitration, is GRANTED, and its Motion to Dismiss is DENIED. Plaintiff Commercial Metals Company and Defendant Oldendorff Carriers GmbH & Co., KG shall proceed to arbitration in London on Plaintiff Commercial Metals Company's claims against Oldendorff Carriers GmbH & Co., KG., in accordance with the Oldendorff/Barna Charter Party as incorporated in the bills of lading of which Commercial Metals Company is a consignee.  In light of this impending arbitration, it is further

ORDERED that all proceedings in this consolidated action are STAYED pending the outcome of the arbitration.  Within thirty (30) days after a final award in arbitration has been rendered in the London arbitration, any party to this action may move to lift this STAY by filing a motion accompanied by a copy of this Order and evidence that the London arbitration has been concluded.  Any now pending claims that are not resolved in the London arbitration may then proceed in this case.  It is further

ORDERED that Claimant's Motion to Dismiss in Favor of Arbitration (Document No. 124) is DENIED as moot, and S-Bulk, KS's and Seven Seas Carriers AS's Motion for Summary Judgment (Document

No. 123) is DENIED without prejudice to its being refiled, if then appropriate, after the STAY is lifted upon conclusion of the London arbitration.  It is further

ORDERED that Claimant S-Bulk KS's Motion to Compel Specific Performance (Document No. 64) is DENIED without prejudice to its being refiled as a motion for summary judgment, if then appropriate, after the STAY is lifted, and Claimant S-Bulk KS's Motion to Vacate Order (Document No. 115) is DENIED as moot.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 30th  day of March, 2010.


_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE