IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BARNA CONSHIPPING, S.L., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-163 |
| | § | |
| 8,000 METRIC TONS, MORE OR LESS OF ABANDONED STEEL, *in rem*, et al., | § | |
| | § | |
| Defendant. | § | |

Consolidated with

| | | |
|---|---|---|
| COMMERCIAL METALS COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-272 |
| | § | |
| M/V SATURNUS, *in rem*, her engines, tackle, apparel, etc.; S-Bulk, KS; Seven Seas Carriers AS; and Oldendorff Carriers GmbH & Co., KG, *in personam*, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Pending is Commercial Metals Company's Motion to Reconsider Order Granting Motion to Dismiss in Favor of Arbitration (Document No. 162). After carefully considering the motion, responses, and the applicable law, the Court concludes that the motion should be denied, and the stay will remain in place.

I.  Background

The Court fully considered the arguments of Commercial Metals Company ("CMC") and all other parties with respect to arbitration in its Memorandum and Order dated March 30, 2010 (the "March 30th Order"), which is incorporated by reference herein.  In that order, the Court concluded that the language in the bills of lading referring to the Oldendorff/Barna Charter party by date alone-- October 21, 2008--sufficiently incorporated that charter party into the bills of lading.  *See* Document No. 148 at 10-11; Steel Warehouse Co., Inc. v. Abalone Shipping Ltd. of Nicosai, 141 F.3d 234, 237 (5th Cir. 1998); *see also* Cont'l Ins. Co. v. Polish S.S. Co., 346 F.3d 281, 283-84 (2d Cir. 2003).

CMC now asserts that:

> Known to both Oldendorff and S-Bulk, but unbeknownst to the Court and CMC . . . the MV *Saturnus* was subject to two different voyage charter parties for one voyage, one between Grand China and Oldendorff and the other between Oldendorff and Barna, both of which are dated October 21, 2008.[1]

Based upon its claimed new discovery of the Grand China/Oldendorff Charter party,[2] CMC seeks reconsideration of the March 30th Order.

---

[1] Document No. 162 at 6.

[2] The Court observed in its March 30th Order that Grand China chartered the Vessel to Oldendorff, who sub-voyage chartered to Barna.  *See* March 30th Order at 3 n.2.

2

## II.   Reconsideration is Not Merited

As an interlocutory order, the March 30th Order is subject to revision at the Court's discretion.  *See* FED. R. CIV. P. 54(b); *see also* Zimzores v. Veterans Admin., 778 F.2d 264, 267 (5th Cir. 1985) (Garwood, J.); Dos Santos v. Bell Helicopter Textron, Inc. Dist., 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009).  This discretion "is exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." Dyson, Inc. v. Oreck Corp., 647 F. Supp. 2d 631, 643 (E.D. La. 2009) (Vance, J.).  "A motion for reconsideration may not be used to . . . introduce new arguments."  LeClerc v. Webb, 419 F.3d 405, 412 n.13 (5th Cir. 2005); *see also* Lincoln Gen. Ins. Co. v. De La Luz Garcia, 501 F.3d 436, 442 (5th Cir. 2007) ("[G]enerally speaking, we will not consider an issue raised for the first time in a Motion for Reconsideration." (citations omitted)).

The record of this litigation belies CMC's assertion that it was unaware of the Grand China/Oldendorff Charter Party prior to the Court's Memorandum and Order, and instead reveals that CMC chose to assert no argument whatsoever regarding the Grand China/Oldendorff Charter Party despite at least three opportunities to do so.  Oldendorff asserts, and CMC does not contest, that "a copy of the Oldendorff/Grand China charter party was produced to

CMC by Oldendorff on August 10, 2009."[3]  CMC never mentioned, much less claimed confusion about, the Grand China/Oldendorff Charter Party in its Response in Opposition to Oldendorff's Motion to Dismiss in Favor of Arbitration (Document No. 96), which CMC filed one and half months after it received through discovery the Grand China/Oldendorff Charter Party.  Moreover, Claimant S-Bulk KS ("S-Bulk") served CMC with the fixture recap between Grand China and Oldendorff in its January 6, 2010 Motion to Dismiss in Favor of Arbitration (Document No. 124).[4]  Again, a month later CMC made no mention of this fixture recap when it filed its Response in Opposition to S-Bulk's Motion to Dismiss in Favor of Arbitration (Document No. 135).  Finally, the Court held an hour-long hearing on March 22, 2010, in which the parties comprehensively addressed the issue of arbitration.[5]  Even then, CMC made no mention of the Grand China/Oldendorff Charter Party or its fixture recap and claimed no confusion about them, although it elaborated upon its arguments regarding the Oldendorff/Barna Charter Party, the fixture recap between those two parties, and the June 20, 2008 charter

---

[3] Document No. 165 at 5.  Defendants S-Bulk KS and Seven Seas Carriers AS also assert that "CMC has had a copy of the Grand China/Oldendorff Charter Party since produced by Oldendorff on August 10, 2009."  Document No. 164 at 3.  Likewise, CMC does not refute their assertion.

[4] *See* Document No. 124, ex. B.

[5] *See* Document No. 147 (Minute Entry); Document No. 149 (Transcript).

party form attached to that recap.[6]  CMC has offered no new evidence and made no new argument that it could not have submitted well before the Court issued its March 30th Order,[7] and reconsideration of that Order is therefore not merited.

### III. Alternatively, the Reasons Given for Reconsideration Are Not Meritorious

If the Court were to reconsider its March 30th Order, it would not overturn it.  CMC argues that, as a consignee to the bills of lading, it is a third party to whom the bills have been negotiated, and thus the "no confusion" standard does not apply to determine whether the bills sufficiently incorporated a charter party. However, although CMC was not itself the charterer, if in fact it "participate[d] in the formation of," and was not "unaware of" the

---

[6] Document No. 149 at 12-14.

[7] CMC points to the declaration of Oldendorff's Bjoern Ihlenfeld, stating that "[t]here is no other charter party dated October 21, 2008 relating to the M/V SATURNUS other than the voyage charter between Oldendorff and Barna."  Document No. 166 at 2 (citing Document No. 114, ex. F at APP. 000017).  CMC claims that this "false testimony . . . misled both the Court and CMC, and CMC should not be held to have waived an argument it was deceived into believing did not exist."  Id.  Oldendorff did not serve Ihlenfeld's declaration on CMC until *October 26, 2009*, and then as part of its *reply* to CMC's response on the motion to dismiss.  CMC fails to explain how it could have been "misled" and "deceived" by this mistaken declaration a month earlier when, on *September 23, 2009*, it filed its response to Oldendorff's motion to dismiss without even mentioning the Grand China/Oldendorff Charter Party. Moreover, CMC--with the dated Grand China/Oldendorff Charter Party in its hands--should have pointed out the mistake in Ihlenfeld's declaration if such was of importance to CMC's theory of its case.

charter party that the bills of lading intended to incorporate, the underlying reasoning behind the "no confusion" test would apply to CMC. *Cf.* Keytrade USA, Inc. v. Ain Temouchent M/V, 404 F.3d 891, 896 (5th Cir. 2005) ("The underlying concern for the 'no confusion' requirement is that a third party, *which did not participate in the formation of, or is otherwise unaware of*, the charter party, should not be held to terms of which it had no notice." (citations omitted) (emphasis added)); Cargill Ferrous International v. Sea Phoenix MV, 325 F.3d 695, 698-99 (5th Cir. 2003) (in addressing an argument from the bill of lading consignee that the bill, lacking identifying information for the charter party, did not sufficiently incorporate the charter party, noting that "[w]hatever may be the merits of [the argument] in a case where consignor or consignee under the bill of lading is without adequate notice of the terms of a charter party adopted by cross-reference, this contention [has] no application to the very party that negotiated the charter" (quoting Cargill B.V. v. S/S Ocean Traveller, 726 F. Supp. 56, 59 (S.D.N.Y. 1989))).[8]

---

[8] The holder's involvement as a charterer of the underlying charter party is simply one means of establishing that the holder had notice of the incorporated charter party, which is the ultimate point of the inquiry. Many courts--including those in "both the Eastern District of Louisiana and the Southern District of New York, two of the districts with the busiest admiralty dockets in the country," *see* Sea Phoenix, 325 F.3d at 703--have so characterized the inquiry of incorporation of a charter party into a bill of lading. *See, e.g.*, Cont'l Fla. Materials, Inc. v. M/V Lamazon, 334 F. Supp. 2d 1294, 1297 (S.D. Fla. 2004) ("[C]ourts will find incorporation where 'the holder of the bill of lading has

In its March 30th Order, the Court concluded that incorporation of the October 21, 2008 Charter Party was enough; date identifications on Congen bills of lading have frequently been held explicitly to identify a charter party for incorporation. *See, e.g.*, Steel Warehouse, 141 F.3d at 237; Cont'l Ins. Co., 346

---

either actual or constructive notice of the incorporation' *and* 'the bill clearly refers to the charter party.'" (citations omitted) (emphasis in original)); Volgotanker Joint Stock Co. v. Vinmar Int'l Ltd., No. 01 CV 5064, 2003 WL 23018798, at *7 (S.D.N.Y. Dec. 22, 2003) ("Since a bill of lading is a negotiable instrument, the specificity requirement is aimed at protecting those bill holders, who had nothing to do with the charter party, from being bound to an agreement of whose terms they have neither knowledge nor notice."); Steel Coils, Inc. v. Captain Nicholas I M/V, 197 F. Supp. 2d 560, 567 (E.D. La. 2002) ("Thus the seminal question is whether Steel Coils was an innocent or naive purchaser [of the bill of lading] or whether it was an experienced participant with *actual or constructive notice* that the charter party referenced COGSA." (emphasis added)); Lafarge Corp. v. M/V Macedonia Hellas, No. Civ. A. 99-2648, 2000 WL 687708, at *5 (E.D. La. May 24, 2000) ("In other words, *Lafarge had insufficient notice that the charter party had been incorporated* into the bill of lading." (emphasis added)); Thyssen, Inc. v. M/V Markos N, No. 97 CIV 6181(MBM), 82708, 1999 WL 619634, at *3 (S.D.N.Y. Aug. 16, 1999) (Mukasey, J.) ("The incorporation of a charter party into the bill of lading depends on whether the references to the charter party are sufficient to give the holder of the bill of lading notice of its existence."); Associated Metals & Minerals Corp. v. M/V Venture, 554 F. Supp. 281, 283 (E.D. La. 1983) ("[T]hird parties, since they are strangers to the charter party, should be able to rely on clean bills of lading free from the restraint of agreements between the shipowner and charterer, as to which the third parties *have no notice*. . . . However, *notice is effectively given* where the terms of the charter party are expressly incorporated into the bill of lading." (emphasis added)); *cf.* Steel Warehouse, 141 F.3d at 237 ("Steel Warehouse argues that the key issue here should be notice, actual or constructive . . . . Abalone argues that incorporation should be the sole issue, and that notice is irrelevant. We believe that in this particular situation, this is a distinction without a difference . . . . Given the facts before us in the instant case, proper incorporation yields constructive notice.").

7

F.3d at 283-84. CMC in moving for reconsideration argues now that there is ambiguity based on extrinsic facts--specifically, the existence of *two* charter parties associated with the Saturnus bearing the same date: the Oldendorff/Barna Charter Party and the Grand China/Oldendorff Charter Party. Volgotanker ended the inquiry here; in the face of a similar latent ambiguity, it simply held that the ambiguity precluded incorporation with no discussion of the bill-holder's knowledge, or lack thereof. *See* Volgotanker Joint Stock Co. v. Vinmar International Ltd., No. 01 CV 5064, 2003 WL 23018798, at *6 (S.D.N.Y. Dec. 22, 2003).

The Fifth Circuit, however, actually examines the documents to determine if there is any basis--or an absence of any basis--to charge the holder with knowledge or notice of an incorporated charter party. In those situations where there is no possibility of ambiguity, the Court has held there is no incorporation. Thus, in Golden Chariot, it held that evidence of the third-party holder's knowledge or constructive knowledge of the charter party's terms was irrelevant where the bill of lading left *entirely empty* the blanks provided for identification of the charter party to be incorporated:

> [T]he fact that the third party might be aware of the arbitration clause in the charter party does not bind them to it. [The third party] could just as easily have thought that because the bill of lading . . . did not refer to the charter party . . . that the nonincorporation was intentional.

8

31 F.3d at 319; *see also* <u>Lafarge Corp. v. M/V Macedonia Hellas</u>, No. Civ. A. 99-2648, 2000 WL 687708, at *5 (E.D. La. May 24, 2000) ("Regardless of any notice Lafarge may have had about the existence of a charter party, the bill of lading, by its own terms (or lack thereof), does not incorporate the charter party's arbitration clause. In other words, Lafarge had insufficient notice that the charter party had been incorporated into the bill of lading."); <u>Mitsui & Co., Ltd. v. M/V Hermann Schulte</u>, Civ. A. no. 95-3270, 1996 WL 365660, at *2 (E.D. La. July 1, 1996) (Clement, J.) ("Given the clear law providing that at least minimal identification of the charter party is a precondition to its incorporation into a bill of lading, such an omission can only be regarded as a decision not to seek incorporation of the charter party."). Here, on the other hand, we are examining bills of lading that expressly incorporate the "CHARTER-PARTY dated 21-10-2008." Thus, unlike <u>Golden Chariot</u>, <u>Lafarge</u>, and <u>Mitsui</u>, the Court cannot find that the bills of lading on their face do not incorporate an underlying charter party, nor can the Court find from the documents that CMC had "insufficient notice that the charter party had been incorporated into the bill of lading." <u>Lafarge</u>, 2000 WL 687708, at *5.

At this juncture, and given CMC's reliance on extrinsic evidence of *two* charter parties of even date to raise an ambiguity, it is proper to examine the extrinsic evidence also to ascertain if the putative ambiguity can be resolved. This was the approach

9

taken by at least two cases in the Southern District of New York, which are both more persuasive that the truncated analysis in Volgotanker. *See* MacSteel Int'l USA Corp. v. M/V Jag Rani, No. 02 Civ. 7436, 2003 WL 22241785, at *1, *4-5 (S.D.N.Y. Sept. 30, 2003) (date blank for identification of charter party to incorporate in bill of lading filled in with: "AS PER RELEVANT"); New York Marine Managers, Inc. v. M.V. "Topor-1", No. 88 CIV. 3682, 1989 WL 4030, at *4 (S.D.N.Y. Jan. 17, 1989) (Mukasey, J.) (date blank filled in with: "FREIGHT PREPAID"). In both cases, the courts found that the entry of *some* reference suggesting incorporation of a charter party was sufficient to direct the parties to undertake discovery and present evidence at a hearing on whether the holder of the bill had actual notice of the incorporation of the intended charter party. *See* MacSteel, 2003 WL 22241785, at *5; "Topor-1", 1989 WL 4030, at *4-5.

Here, no further discovery would be needed; the relevant information demonstrating that CMC had notice of the relevant charter party is already of record. The facts are that CMC knew that Barna--as agent of Compania Espanola de Laminacion, S.L. ("Celsa"), from whom CMC bought the steel that shipped on the M/V Saturnus--was the relevant charterer.[9] CMC's Shankar Tahilramani,

---

[9] In its March 30th Order, the Court had no need to address this evidence, previously proffered by Oldendorff, in light of the argument CMC made at that time as to why it lacked sufficient notice of the incorporated charter party.

when he inquired of Celsa, was directed to Ignacio Bengochea of Barna regarding the shipment.[10] CMC's Tahilramani directly corresponded with Barna's Bengochea and Alberto Portela, another Barna employee,[11] regarding logistics, vessel nomination details, and ports and discharge rates.[12] Tahilramani in behalf of CMC specifically instructed Barna's Portela to ensure that certain terminals "*are made part of your charter party* to keep our costs low at disports."[13] Further, Portela emailed CMC's Tahilramani on October 21, 2008, asking for his confirmation that the MV Saturnus was acceptable: "Wld appreciate your urgent confirmation as have vssl firm til 12:00 hrs local time, i.e., 1 hour more."[14] The Court

---

[10] Document No. 114 at 8; id., ex. G at APP. 000052.

[11] Both Portela and Bengochea are identified as Barna employees in their email signatures in all correspondence with Tahilramani. Bengochea's email signature reads:

   Ignacio Bengochea
   Barna Conshipping / CELSA Group
   Phone: [omitted]

Id., ex. G at APP. 000065-66. Portela's signature reads:

   Alberto Portela

   Barna Conshipping SL
   [email and phone numbers omitted]

Id., ex. G at APP. 000057.

[12] Document No. 114 at 9; id., ex. G at APP. 000048-51.

[13] Id., ex. G at APP. 000048.

[14] Id., ex. G at APP. 000044.

finds from this correspondence between Barna and CMC that CMC had notice that the bills of lading issued to Celsa incorporated the Oldendorff/Barna charter party--the only charter party to which Barna, Celsa's agent, was a party.[15]  *See* M/V Markos N, 1999 WL 619634, at *3 (where consignee "not only contracted with [the shipper] to ship its steel, but also requested a copy of [the shipper's] standard charter party, having been put on notice that such an agreement existed," the consignee could not "argue now that it was unaware that [the shipper] was a party to the . . . charter party").  Indeed, this conclusion is supported by CMC's very

---

[15] CMC's assertion that there is no basis on the record to determine which charter party the parties to the bills of lading meant to incorporate, *see* Document No. 166 at 6, is incorrect.  The bills of lading were 1994 edition Congen form bills, as discussed in the Prior Order.  *See* Document No. 82, ex. B.  It was only the Oldendorff/Barna Charter Party that required bills of lading issued thereunder to be 1994 edition Congen bills.  *See* Document No. 114, ex. I at Barna 0576; *cf.* Keytrade, 404 F.3d at 895 (no confusion as to which charter the bill of lading incorporated where, among other things, "[i]t is the voyage charter that specifies a Congen bill of lading was to be used.").  Furthermore, the agent who signed the bills of lading, Naviera Barcelonesa, S.A., derived its authority from the Oldendorff/Barna Charter Party.  *See* Document No. 82, ex. A (bills of lading); Document No. 114, ex. I at APP. 000087 ("During loading, Charterers are allowed to issue Bills of Lading for cargo actually loaded"); id., ex. I at APP. 000089 (designating Naviera Barcelonesa as Charterers' Agents at loading port); *cf.* Sea Phoenix, 325 F.3d at 699 (no confusion as to which charter the bill of lading sought to incorporate where, among other things, "the agent who signed the bills of lading . . . received its agency authority solely from a term in the voyage charter.").  Finally, the Grand China/Oldendorff Charter Party required all bills of lading issued under it to include several clauses that are conspicuously missing from the Celsa bills of lading, namely, Clauses Paramount with reference to the Carriage of Goods by Sea Act of the United States, and a War Clause.  *See* Document No. 82, ex. B.

arguments in this litigation: all of its original arguments were that confusion existed as to which charter party *between Barna and Oldendorff* was incorporated by the bills of lading.[16]  Only after losing on those arguments did CMC return six months later with this newly conceived argument for reconsideration based upon the Grand China/Oldendorff Charter Party.

Finally, the Court observes that both the Oldendorff/Barna and the Grand China/Oldendorff Charter Parties require arbitration in London.  Thus, every document on which CMC has ever relied to assert confusion requires arbitration in London.  *Cf.* The Rice Co. (Suisse), S.A. v. Precious Flowers Ltd., 523 F.3d 528, 537 (5th Cir. 2008) ("We have found arbitration clauses to be binding even where the terms of incorporation were not entirely clear, but that was when there was no chance that the parties were confused as to whether arbitration would apply." (citing Keytrade, 404 F.3d at 896-97; Sea Phoenix, 325 F.3d at 704)); M/V Markos N, 1999 WL 619634, at *3 ("Moreover, the bills of lading here explicitly incorporate the arbitration clause of the charter party, thus assuring that Thyssen had notice that any dispute arising under the bills of lading would be referred to arbitration.").

Because no good cause has been shown to reconsider the March 30th Order, and because the March 30th Order should not be

---

[16] *See* Document No. 96.

overturned even if it were reconsidered, CMC's motion will be denied and the stay shall remain in place.

### IV. Order

It is therefore

ORDERED that Commercial Metals Company's Motion to Reconsider Order Granting Motion to Dismiss in Favor of Arbitration (Document No. 162) is DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this <u>3rd</u> day of November, 2010.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE